CHUGACH ELECTRIC ASSOCIATION, Inc., a non-profit electric cooperative corporation, and D. Bailey Calvin, Appellants,

v.

CITY OF ANCHORAGE, a municipal corporation, Municipal Light and Power Department, Robert H. Oldland and Carroll A. Oliver, and Calais Company, Inc., Appellees.

ALASKA PUBLIC SERVICE COMMISSION, State of Alaska, Appellant,

v.

CITY OF ANCHORAGE, a municipal corporation, Municipal Light and Power Department, Robert H. Oldland and Carroll A. Oliver, and Calais Company, Inc., Appellees.

Nos. 705, 706.

Supreme Court of Alaska.

May 1, 1967.

William J. Moran, Anchorage, for appellants Chugach Electric Ass'n, Inc. and D. Bailey Calvin.

Warren C. Colver, Atty. Gen., and Andrew E. Hoge, Asst. Atty. Gen., Juneau, for appellant Alaska Public Service Commission.

Stanley Howitt, Asst. City Atty., Anchorage, for appellees City of Anchorage, Municipal Light & Power Department, Carroll A. Oliver and Robert H. Oldland.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

We are again asked to resolve a dispute between a municipally owned and operated electric utility and a public utility which has been certified pursuant to the provisions of the Alaska Public Service Commission Act.

This consolidated appeal arises from the superior court's denial of a permanent injunction to appellants Chugach and Calvin. In the lower court these parties sought to restrain the city of Anchorage from furnishing electrical energy to Bancroft Subdivision which is located approximately one-quarter of a mile outside Anchorage's city limits.[1]

Several questions presented in this appeal have been answered by our recent decision in Homer Electric Ass'n v. City of Kenai.[2] That case involved questions as to the effect of the issuance of a certificate of public convenience and necessity to a public utility by the Alaska Public Service Commission. We held that such a certificate was not an exclusive, or monopoly, grant to furnish electrical energy within the corporate limits of the city of Kenai.[3] Our study of the legislative history of the Alaska Public Service Commission Act,[4] and in particular the 1963 amendments thereto, led us to conclude that municipally owned and operated utilities were intended to be excluded from the act's coverage. We, therefore, held that the delineation of a service area contained in a certificate of public convenience and necessity did not provide the basis for precluding a municipality from competing, within its own corporate limits, with such a certificated utility.[5]

---

1. Appellants also requested mandatory injunctive relief (i.e., removal of the city's transmission facilities from the area in question).

2. Opinion No. 390, 423 P.2d 285 (Alaska 1967).

3. The certificate of public convenience and necessity which was issued to Homer Electric provided for a service area which included portions of the city of Kenai.

4. AS 42.05.010–42.05.650.

5. We also pointed out that it was not disputed that the city of Kenai possessed the right and authority to own and operate an electrical distribution system. In this regard AS 29.10.135(a) provides:
   The council may purchase, construct, or otherwise acquire, establish and operate public wharves, public sewers, public cold storage plants, telephone systems and plants for the use, sale and distribution of light, water, power, heat and telephone service and the collection and treatment of sewage for the residents of the city and the public.

■ We adhere to our decision in *Homer Electric* and hold that appellant Chugach's certificate of public convenience and necessity does not, in relation to the city of Anchorage's electrical utility system, grant it a monopoly to furnish electrical energy throughout the service areas which have been allotted to it. As we view the issues in this appeal, the primary question raised is whether the city of Anchorage is authorized to furnish electrical power to the geographical area in question which is located outside of Anchorage's corporate limits.

Resolution of this question involves construction of, and determination of the applicability of, the provisions of AS 29.10.-135(b). This statute provides:

A municipality which owns or operates plants for the use, sale or distribution of light, power * * * service * * * for the residents of the city may also sell and distribute the light, power * * * service to * * * the residents of contiguous and adjacent districts outside the limits of the city, and for that purpose may construct, purchase or otherwise acquire, own, maintain and operate extensions, pole lines * * * and other neces-

sary apparatus and equipment, together with the real property necessary for them, outside the limits of the city.[6]

■ The precise controversy in this appeal is over the proper interpretation of the language "contiguous and adjacent districts" and whether or not the geographical area in dispute comes within this phraseology. In Chugach Electric Ass'n v. City of Anchorage[7] the Ninth Circuit had occasion to construe "contiguous and adjacent districts" as used in the statute.[8] The Ninth Circuit concluded that the disputed phrase

refers to contiguous districts *and* adjacent districts. We think this is its plain meaning. This involves no conversion of the word 'and' to 'or.'

\* \* \* \* \* \*

\* \* \* We think the court correctly considered that the word 'districts' meant 'areas' or 'localities.'[9]

■ We adopt this construction of "contiguous and adjacent districts" and hold that under AS 29.10.135(b) the city of Anchorage is authorized to sell and distribute electrical energy to adjacent districts, areas, or localities located within a reasonable distance from the limits of the city of Anchor-

**6.** See also AS 29.10.138 which provides: Extraterritorial jurisdiction. For the purpose of installing, acquiring, owning or operating plants for the supply of water, light, heat or power to the city or its people, or for the purpose of constructing and maintaining a sewer system, a city may acquire and own property outside the boundaries of the city and may enact and enforce ordinances to protect the sources of the supply of water for the city from contamination, interruption, interference or injury even though they are situated outside of the boundaries of the city. The council may also enact and enforce ordinances to protect, whether in or out of the city, parks, cemeteries, and playgrounds, and light, heat, power and water plants, and sewers, together with dams, flumes, pipelines, electrical transmission lines and other equipment for serving the city or its inhabitants with light, heat, power or water or drainage through sewers, whether owned by the city or not.

**7.** 214 F.2d 110, 113, 15 Alaska 70 (9th Cir. 1954).

**8.** AS 29.10.138 was codified at that time as ACLA 1949 § 16–1–38.

**9.** The trial court in its opinion in Chugach Electric Ass'n v. City of Anchorage, 106 F.Supp. 6, 7–8, 13 Alaska 747 (D. Alaska 1952), had held that "the conjunctive 'and' must be read as 'or.'" In his opinion Judge Folta also wrote that under the statute quoted a municipality is authorized to extend its distribution system into any non-contiguous area within a reasonable distance of its corporate limits, provided that the intervening territory is unsettled and uninhabited or virtually so, but that it was never intended by the use of the term 'adjacent' to permit a municipality to leapfrog a settled area, particularly where, as here, such area is, from all appearances, a part of the metropolitan area, and extend its distribution system into the territory beyond.

age.[10] This leads us to the question of whether the Bancroft Subdivision is an adjacent district, area, or locality within the intendment of AS 29.10.135(b).[11]

Named appellee Calais Company is the owner and subdivider of the Bancroft Subdivision [12] which, at its closest point, lies within approximately one-quarter of a mile of the southerly limits of the city of Anchorage.[13] Examination of the record in this case has convinced us that the Bancroft Subdivision is an adjacent district within the definition adopted in Chugach Electric Ass'n v. City of Anchorage.[14] We further hold that Bancroft Subdivision lies within a reasonable distance from the city of Anchorage. Therefore, under the provisions of AS 29.10.135(b) the city of Anchorage is empowered to sell and distribute electrical energy to residents of the Bancroft Subdivision. The fact that the service area designated in appellee Chugach's certificate of public convenience and necessity encompasses this subdivision does not, under our holding in Homer Electric Ass'n v. City of Kenai,[15] grant it a monopoly in regard to the furnishing of electrical energy to Bancroft Subdivision.

Here, as in *Homer Electric*, the municipally owned and operated electric utility is furnishing service to, and within, an authorized geographical area. In such circumstances the certificated utility is not, under the Alaska Public Service Commission Act, insulated from competition by municipally owned and operated utilities.

Brief reference will be made to two other issues in this appeal. Appellants argue that the superior court erred in failing to hold that the city of Anchorage's extension of its electrical system into Bancroft Subdivision constituted waste, or misuse, of public funds.[16] The record discloses that the trial court's findings of fact and conclusions of law pertaining to this question are amply supported by evidence. We sustain the superior court's determination of this issue. In our opinion there is no merit in appellees' contention that appellants should be barred from any relief in this court because of laches on their part. Appellees' assertions in this regard are not borne out by the record.

In Homer Electric Ass'n v. City of Kenai[17] we noted that a satisfactory solu-

10. Appellees contend that the Alaska legislature was aware of the Ninth Circuit's holding in the *Chugach* case when it enacted the 1963 amendments to the Public Service Commission Act. Appellees argue that if the *Chugach* decision did not express the legislature's intent, the section would have been changed or clarified. See Reed v. Steamship Yaka, 373 U.S. 410, 414, 83 S.Ct. 1349, 10 L.Ed.2d 448, 452 (1963), where the Supreme Court said:
    But we cannot now consider the wording of the statute alone. We must view it in the light of our prior cases in this area * * * the holdings of which have been left unchanged by Congress.
    See 1 Sutherland, Statutory Construction § 1935 (3d ed. 1943).

11. In the *Chugach* case referred to above, the area in question, at its closest point, was approximately one and one-half miles from the city limits of Anchorage.

12. Chugach Electric Ass'n v. Calais Co., 410 P.2d 508 (Alaska 1966), also involved this same subdivision.

13. See generally sketch of the area in question contained in the appendix hereto.

14. 214 F.2d 110, 15 Alaska 70 (9th Cir. 1954). We shall not pass upon what appears to be an alternative basis of the trial court's decision, namely, the expanded powers possessed by municipalities through constitutional and statutory provisions providing for home rule cities.

15. Opinion No. 390, 423 P.2d 285 (Alaska 1967).

16. More specifically, the trial court held that:
    Construction of the line is neither wasteful nor uneconomic so far as the City is concerned. Furthermore, I find that the contemplated service will be extremely profitable to the City.

17. 423 P.2d 285, 290 (Alaska 1967).

tion to the question presented was dependent upon legislative resolution. This appeal presents yet another facet of the still unresolved questions regarding the relationship between certificated utilities and municipally owned and operated utilities.

The judgment entered below is affirmed.

## APPENDIX

Northern Lights Blvd.

Kimberly Terrace

Tudor Rd.

Lake Otis Rd.

Seward Hwy.

Bancroft

Dowling Rd.

Chugach lines ⊢ ⊢ ⊢ ⊢      City lines −.—.—      City limits /////